[Not for Publication - Not to be Cited as Precedent]

# United States Court of Appeals
## For the First Circuit

No. 01-1810

JAMES R. HOYT,

Plaintiff, Appellant,

v.

ROCHE BROTHERS SUPERMARKETS,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and O'Toole,* District Judge.

Paul A. Rinden, with whom Rinden Professional Assoc., was on brief, for appellant.
H. Charles Hambelton, with whom Kimberly M. McCann and Gibson & Behman, P.C., were on brief, for appellee.

January 18, 2002

**STAHL, Senior Circuit Judge**.  Appellant James R. Hoyt ("Hoyt") appeals from a district court order granting summary judgment in favor of appellee Roche Brothers Supermarkets ("Roche Brothers").  In this personal injury case, Hoyt alleged that he sustained injuries to his leg due to Roche Brothers' negligence.  The district court held that no reasonable jury could conclude that it was more likely than not that Roche Brothers had caused the dangerous condition that led to Hoyt's injury.  We reverse, finding that the district court relied on impermissible inferences in favor of the moving party in reaching its holding.

The injury in question occurred as follows.  On the morning of December 15, 1997, Hoyt, a resident of Concord, New Hampshire and a truck driver for Lilly Transportation, stopped at the loading dock at a Roche Brothers market in Acton, Massachusetts, to deliver eggs.  A co-worker accompanied Hoyt. The loading dock could accommodate two trucks and, after waiting briefly for one truck to leave, Hoyt pulled in next to another truck.  At that time, a number of empty pallets -- portable wooden platforms on which truck drivers often deliver their loads -- were stacked on the loading dock.  While Hoyt was unloading eggs from his truck onto a cart on the loading dock, several pallets fell on him, injuring his leg.  The pallets in

question had been leaning up vertically against a stack of horizontally stacked pallets, which the parties agree created a dangerous situation.  Hoyt brought this case in district court based on diversity jurisdiction.

Under Massachusetts law, a property owner has a duty to lawful visitors to maintain his property in a reasonably safe state.  Mounsey v. Ellard, 363 Mass. 693, 707 (1973).  A property owner is liable if he has notice that an unsafe condition existed.  Notice is satisfied if 1) the property owner or its employee caused the unsafe condition; 2) the property owner or its employee had actual knowledge of the condition; or 3) the unsafe condition was present and evident for a time long enough that the property owner or its employee should have known about it. Oliveri v. Mass. Bay Transp. Auth., 363 Mass. 165, 167 (1973).  The only question on appeal is whether the district court properly granted summary judgment in favor of Roche Brothers on the issue of whether Roche Brothers or its employee caused the unsafe condition -- that is, the vertical stacking of the pallets -- that led to the pallets falling on Hoyt's leg.[1]

---

[1] The district court also found against Hoyt under prong 3 (whether the unsafe condition had existed long enough so that Roche Brothers should have had notice and corrected it) as well as under a theory of negligence on the part of Roche Brothers for failing to implement a safety policy against stacking pallets on their side.  Hoyt has not appealed these rulings.

Summary judgment is proper where the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The question of whether a Roche Brothers employee caused the unsafe condition is such an element. Hence, in order to escape summary judgment, Hoyt must present evidence sufficient for a reasonable factfinder to find that a Roche Brothers employee caused the pallets to be stacked vertically. When evaluating such evidence, the court must draw all reasonable inferences in favor of the nonmovant, Cippollone v. Yale Indus. Prod., Inc., 202 F.3d 376, 378 (1st Cir. 2000), in this case, Hoyt.

We review the grant of summary judgment de novo. Id. No direct evidence was offered in this case about who placed the pallets that injured Hoyt. The parties instead put forth circumstantial evidence showing how the pallets were generally handled. The relevant evidence was provided by several Roche Brothers employees. George Hayes, the Roche Brothers receiving clerk at the time of the accident, testified that truck drivers

-5-

typically brought pallets into the receiving area of the store to unload the merchandise and that they then took the empty pallets away. He stated that some truck drivers preferred to leave the loaded pallets at the store to be unloaded by a sales representative or a Roche Brothers employee and that in that case the empty pallets were retrieved at a later time. According to Hayes, pending pickup by the truck drivers, empty pallets were stored on the loading dock. Because the pallets were generic and unmarked as to ownership, truck drivers retrieving pallets could take any empty pallets awaiting removal.

Hayes also testified that he was responsible for keeping the receiving area clean and organized, including the stacking of empty pallets. He explained that when he first came into work early in the morning he collected any empty pallets in the store proper and stacked them. Then, at six o'clock a.m., when he opened the door, he moved the stacked pallets to the loading dock. During the course of the day, he continued to stack empty pallets on the loading dock. James Lundy, the store manager at the time of the accident, confirmed that empty pallets were stacked on the loading dock, among other places, for driver pickup. However, both Hayes and Lundy, as well as David Kerr, the director of human resources for Roche Brothers,

testified that in any event it was the practice and the policy of Roche Brothers and its employees to stack the pallets horizontally and not vertically and to re-stack any pallet found lying on its side.[2]

The record thus indicates that Roche Brothers employees, and specifically Hayes, were responsible for stacking empty pallets at the Acton store. There is no evidence in the record that anyone other than Roche Brothers employees stacked

---

[2] The meaning of the following lines from Lundy's testimony has been strongly contested by the parties:

Q: Do you stack [pallets] on the loading platform?
A: Yes.
Q: Both horizontally and vertically?
[Roche Brothers's attorney]: Objection.
[Lundy]: Yes.

Hoyt has argued that, from the sequence of questions put to Lundy, he is entitled to an inference that Roche Brothers employees actually stacked empty pallets vertically as well as horizontally. The district court disagreed and found that, in the context of Lundy's overall testimony repeatedly stressing that it was Roche Brothers' practice and policy to stack empty pallets only horizontally, Lundy's response was merely a confirmation of the hazard that the company's policies were designed to guard against (Memorandum and Order, No. 99-12172-DPW, at 7 n. 2 (D. Mass., May 2, 2001)). We agree with Hoyt that the plain meaning of Lundy's response could support the inference Hoyt has asked us to draw. However, contrary to what Hoyt has argued, the district court's reluctance to draw that inference from Lundy's testimony seems to stem not from a refusal to draw the inference in favor of Hoyt, but from its judgment that the plain meaning misrepresents what Lundy meant to say. In light of our ruling below, we need not resolve the meaning of Lundy's response and leave for trial the question of whether Lundy's answer can fairly be understood as an admission that Roche Brothers employees stacked some empty pallets vertically.

-7-

empty pallets on the loading dock. The evidence admittedly demonstrates that truck drivers handled pallets in the sense that they brought them, loaded with merchandise, into the store and that they picked up empty pallets from the stacks on the loading dock and took them away in their trucks for future use. But the record contains no evidence to support the position that truck drivers stacked empty pallets or dealt with empty pallets in any way other than to pick them up and take them away.

The district court, however, came to the opposite conclusion -- that is, that "sometimes pallets ended up leaning vertically because of the drivers handling of them" (Memorandum and Order, No. 99-12172-DPW, at 3 (D. Mass., May 2, 2001) (hereinafter "Order")). Specifically, the district court pointed out that Hayes had testified that he occasionally would see pallets left vertically, but that "when you receive in a store for a period of time you have certain rules and they know that's a no, no with me."[3] The court concluded that in that

---

[3] The relevant Hayes testimony was as follows:
> Q. Did you have a -- did you have a practice of keeping pallets stored horizontally rather than leaned up vertically?
> A. That was the policy.
> Q. To keep them stored horizontally?
> A. Positively.
> Q. So if someone left a pallet vertically you'd pick it up and put it down horizontally?
> A. Yes.
> Q. Did you see that occasionally?

context "they" referred to truck drivers (Order at 7, n. 1). The court also found it important that numerous individuals not employed by Roche Brothers had been in the vicinity at the time of the accident, with the implication that any one of them may have placed the pallets that injured Hoyt (Order at 7). Hence, the district court concluded, a Roche Brothers employee was no more likely than someone else to have placed the pallets that injured Hoyt.

We cannot agree. In the context of Hayes' testimony, it is a reasonable inference that the ambiguous "they" referred to the truck drivers, but it is an equally reasonable inference that "they" referred to other Roche Brothers employees, who may have occasionally left the pallets leaning vertically, despite Hayes' "rules." More to the point, the conclusion that Hayes was referring to truck drivers requires us to draw an inference in favor of Roche Brothers, the moving party, which is forbidden in the context of the summary judgment motion. Furthermore, with respect to the district court's second point, in the absence of evidence connecting the truck drivers to the stacking of pallets, the fact that a number of nonemployees of Roche

A. Oh, yeah it happened. It wasn't a common practice. When you receive in a store for a period of time you have certain rules and they know that's a no, no with me.

Brothers, including a truck driver, were in the vicinity when the accident occurred bears no weight on the question of who caused the pallets in question to be stacked vertically.[4]

In summary, the record evidence supports the position that Roche Brothers employees regularly stacked empty pallets. In contrast, we have no evidence that the truck drivers handled the empty pallets in any way other than to remove them from the premises and place them in their trucks. The conclusion that truck drivers on occasion caused empty pallets to be placed vertically can only be reached by drawing inferences from Hayes's ambiguous testimony that "they" occasionally left pallets vertically, from the general circumstances that truck drivers had access to the loading dock, and from the fact that they picked up pallets for the purpose of taking them away. While ultimately the evidence at trial may support this

---

[4] On appeal Roche Brothers makes the additional argument, not discussed by the district court, that "the very fact that the pallets were vertical proves that a Roche Brothers employee did not stack the pallet, as they would have then been horizontal based upon Roche Brothers policies and procedures and the clear testimony of George Hayes." We also find this argument unpersuasive. It is an equally tenable position that, despite Hayes' usual practice and Roche Brothers' policy of stacking pallets horizontally, Roche Brothers employees in this instance deviated from that practice and stacked the pallets vertically. With no evidence to support one or the other position, we cannot infer from Hayes' testimony that the vertical stacking was not done by him or another employee.

conclusion, it was impermissible for the district court to reach it in the context of a motion for summary judgment.

<u>Reversed</u>.